IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) DOWER COMBS, Personal Representative**<br>**of the Estate of A.H., deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-111-RAW** |
| | ) | |
| **(1) STATE OF OKLAHOMA, ex rel. Oklahoma** | ) | |
| **Department of Human Services, et al.** | ) | **Jury Trial Demanded** |
| | ) | |
| **Defendants.** | ) | |

### FIRST AMENDED COMPLAINT

Comes Now the Plaintiff, Dower Combs ("Combs"), as Personal Representative of the

Estate of A.H. , deceased, by and through her attorneys of record Zachary T. Barron of Gibbon,

Barron & Barron and James Cosby of Cosby Law Office, and for her causes of action against the

State of Oklahoma, ex rel. Oklahoma Department of Human Services ("DHS"), Steven Edwards,

Cathie Keen, Henry Wright, Julia Foreman, Dana Rogers, Thomas Walkabout, Brenda

Ridenhour, Brandy Chapman, Betty Bates, William Busch, Dianna Schweitzer (Collectively

"DHS Workers"), Delila Pacheco, Longino Pacheco-Lopez, and John Does Nos. 1-8, states and

alleges, as follows:

#### PARTIES, JURISDICTION AND VENUE

1.      A.H. was a two (2) year old girl and resident of Cherokee County, Oklahoma at

the time of her death.

2.      Combs is an individual and resident of Cherokee County, Oklahoma appointed as

Personal Representative of the Estate of A.H., deceased, in Cherokee County District Court Case

No. PB-2014-58.

3. Notice was given to DHS pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 et seq., on August 11, 2014, and no reply was received within ninety (90) days thereafter.

4. On information and belief, Defendants State of Oklahoma, ex rel. Oklahoma Department of Human Services, Steven Edwards, Cathie Keen, Henry Wright, Julia Foreman, Dana Rogers, Thomas Walkabout, Brenda Ridenhour, Brandy Chapman, Betty Bates, William Busch, Dianna Schweitzer, Delila Pacheco, Longino Pacheco-Lopez, and John Does Nos. 1-8, are Cherokee County, Oklahoma residents.

5. Upon information and belief, Steven Edwards, Cathie Keen, Dianna Schweitzer, William Busch, and Henry Wright held supervisor positions with DHS who personally participated in and knowingly acquiesced to constitutional violations which were a direct and proximate cause of A.H.'s personal injury and death..

6. Steven Edwards, Cathie Keen, Henry Wright, Julia Foreman, Dana Rogers, Thomas Walkabout, Brenda Ridenhour, Brandy Chapman, Betty Bates, William Busch, and John Does Nos. 1-8, are directors, employees, agents, or affiliates of DHS, whose acts, or omissions to act, gave rise to the claims herein.

7. At all times material hereto, Delila Pacheco and Longino Pacheco-Lopez were employed by DHS to serve as foster parents of A.H. and are Cherokee County, Oklahoma residents.

8. A substantial part of the events or omissions giving rise to Comb's claims occurred in Cherokee County, Oklahoma; one or more defendants resides in Cherokee County, Oklahoma; and venue is proper with this Court.

-2-

## FACTUAL ALLEGATIONS

9.      On or about January 3, 2013, A.H. and her sister were taken into emergency custody by DHS against the wishes of their mother and father and in an involuntary manner.

10.      Defendants Delila Pacheco and Longino Pacheco-Lopez were employed by DHS to provide foster care services to children in DHS custody.

11.      On or about September 16, 2013 DHS placed A.H. in the custody and care of Delila Pacheco and Longino Pacheco-Lopez at 247 S. 470 Rd., Tahlequah, Oklahoma 74464.

12.      Prior and subsequent to DHS placing A.H., the Pacheco's had a documented history of unlawful activity:

   a) On or about February 28, 2000 the Pacheco children reported allegations of child abuse;

   b) On or about November 5, 2004 Delila Pacheco plead guilty to Failing to protect child under the age of 4 with restraint/child seat in Cherokee County Case TRC-2004-2749

   c) On or about November 5, 2004 Delila Pacheco plead guilty to Fail to protect child under the age of 13 with restraint in Cherokee County Case TRC-2004-2750.

   d) On or about November 1, 2011 the Pacheco's were involved in reported domestic dispute where law enforcement officials were called to their residence. The law enforcement report indicated Mrs. Pacheco brandished a knife toward Mr. Pacheco in the presence of their children.

-3-

e) On or about August 29, 2012 a Petition for Protective Order was filed in Cherokee County, Oklahoma against Delilah Pacheco and Longino Pacheco-Lopez where it was alleged that Delilah attempted to force the Petitioner, to have sex with Longino. When the Petitioner refused and attempted to leave the Pacheco's house, Delila threatened to assault the Petitioner if she attempted to leave.

f) On or about April 26, 2013 Ms. Pacheco was cited for travelling 89 mph in a 75 mph speed zone.

g) Upon information and belief, during the time that A.H. lived with Mrs. Pacheco, she was arrested for possession of methamphetamines.

h) On or about November 30, 2013 Mrs. Pacheco admitted to smoking marijuana on the 30th and admitted to a history of using marijuana and methamphetamines in the past. According to Mr. Pacheco, Mrs. Pacheco has used marijuana for the last 20 years.

i) According to Mr. Pacheco, Mrs. Pacheco has attempted to suffocate him in the past.

13. Defendants Bates, Walkabout, and Ridenhour conducted the background home study to determine whether the Pachecos were fit to serve as foster parents. While investigating the Pacheco background Bates, Walkabout, and Ridenhour became aware of the fact that the Pachecos used drugs, that there had been prior reports of child abuse asserted against the Pachecos, that on or about November 1, 2011 the Pacheco's were involved in reported domestic dispute where the law enforcement report indicated Mrs. Pacheco brandished a knife toward Mr. Pacheco in the presence of their children, and that on or about August 29, 2012 a Petition for

Protective Order was filed in Cherokee County, Oklahoma against the Pachecos alleging that

Mrs. Pacheco attempted to force the Petitioner, to have sex with Mr. Pacheco.  When the

Petitioner refused and attempted to leave the Pacheco's house, Mrs. Pacheco threatened to

assault the Petitioner.

14.      Defendants Bates, Walkabout, and Ridenhour failed to take any action to

investigate the allegations and facts discovered while conducting the background home study to

determine whether the Pachecos were fit to serve as foster parents.

15.      Defendant Busch, a DHS supervisor, who oversaw Bates, Walkabout, and

Ridenhour was also directly involved in Pachecos' background home study.  Like Bates,

Walkabout, and Ridenhour, he obtained knowledge of the same unlawful and dangerous

activities of the Pachecos.  Despite learning of the Pachecos' background, he failed to take any

action to personally investigate the allegations.

16.      Defendant Busch acquiesced to the failures of Defendants Bates, Walkabout, and

Ridenhour.  Defendant Busch knew his subordinates were not taking action to fully investigate

whether the Pachecos were fit to serve as foster parents to A.H.  Defendant Busch knowingly

failed to enforce DHS policies or require Defendants Bates, Walkabout, and Ridenhour to follow

such policies which are necessary for the safety and well-being of foster children.

17.      As a result of a post-death investigation conducted by DHS officials into the facts

and circumstances surrounding A.H.'s death, Defendant Busch was demoted.  DHS stated in its

demotion letter to Busch that "[prior] to AH living in DP's home, you had information regarding

possible violence, sex and drugs.  You failed to direct staff to research and verify or to personally

review the information thoroughly."  DHS' investigation further discovered that Busch decided

not to take time to obtain reports regarding Mrs. Pacheco's prior arrest in 2011 because it would

have "wasted another day".  Busch had obtained court paperwork regarding a protective order filed against Mrs. Pacheco in 2012 but decided not to read the paperwork which would have disclosed that she attempted to force her sister to have sex with her husband and when Mrs. Pacheco's sister refused she made physical threats.

18.    With full knowledge of the Pachecos' unlawful background, Defendants Busch, Bates, Walkabout, and Ridenhour approved the Pachecos as fit to serve as A.H.'s foster parents and further approved A.H.'s placement with the Pachecos.

19.    During A.H.'s placement with the Pachecos she suffered abuse and personal injuries which include but are not limited to the following:

> a) Mr. and Mrs. Pacheco spanked A.H. on multiple occasions.  Upon information and belief A.H. was hit with a belt.
>
> b) A.H. suffered bruises to her body, including her face.
>
> c) On or about November 6, 2013 A.H. was presented to Tahlequah City Hospital with a fracture of her upper left tibia.

20.    On or about November 6, 2013, medical providers from Tahlequah City Hospital called DHS and expressed concerns about the fact that A.H. had been left unattended at the time of her injury.

21.    Defendants Foreman, Chapman, and Rogers received notice that medical providers had called DHS and expressed concerns about the fact that A.H. had been left unattended at the time of fracturing her leg; however, none of them took any action to personally investigate the allegation.  Further, Foreman, Chapman, and Rogers failed to report the allegation to the DHS child abuse and neglect hotline, as required by DHS policy, for further investigation.

22.    Defendants Foreman, Chapman, and Rogers learned of an allegation that there was drug use in the Pacheco home and failed to investigate the matter and failed to take any action to remove A.H. from the Pacheco home.

23.    Defendants Foreman, Rogers, Chapman, Busch, and Wright learned of the fact that A.H. had suffered bruises to her face while residing with the Pachecos.  Upon learning this fact, Defendants Foreman, Rogers, Chapman, Busch, and Wright failed to take any action to investigate the matter and failed to provide medical treatment to A.H.  Further, Defendants Foreman, Rogers, Chapman, Busch, and Wright failed to notify the DHS child abuse and neglect hotline which would have resulted in the matter being investigated.

24.    Defendants Wright and Busch knew their subordinates, Defendants Foreman, Rogers, and Chapman had knowledge of A.H. suffering bruises and were not taking action to investigate the matter or provide A.H. medical treatment.  Wright and Busch acquiesced to their subordinates' failure to act. Wright and Busch failed to direct their subordinates to take action and failed to enforce DHS policies which are necessary for the safety and well-being of foster children.

25.    Defendant Keen received a report of the fact that A.H. had suffered bruises to her face while residing with the Pachecos.  Upon learning this facts Defendant Keen failed to take any action to investigate the matter, failed to provide medical treatement, and failed to notify the DHS child abuse and neglect holine which would have resulted in the matter being investigated.

26.    Defendant Keen was the supervisor over Defendants Wright, Busch, Foreman, Rogers, and Chapman and knew that each of them were knowingly not following DHS policy and procedures as it related to investigating A.H.'s bruises, allegations of abuse and personal

injury, assessing the dangerous conditions which existed in the Pacheco home, failing to follow

DHS reporting requirements, and failing to remove A.H. from the Pacheco home.

27.     Defendant Keen acquiesced to the failures of Defendants Wright, Busch,

Foreman, Rogers, and Chapman.  Defendant Keen knew her subordinates were not taking action

to investigate A.H.'s bruises, allegations of abuse and personal injury, or taking action remove

A.H. from the Pacheco residence.  Defendant Keen knowingly failed to enforce DHS policies or

require Defendants Wright, Busch, Foreman, Rogers, and Chapman to follow such policies

which are necessary for the safety and well-being of foster children.

28.     Upon information and belief, Mrs. Pacheco informed A.H.'s physician, Dr. Yahya

Ahmad that she did not want her as a foster child in her home.  Upon information and belief,

A.H.'s physician made a report to DHS detailing the fact that Mrs. Pacheco did not want A.H. to

continue residing in her home.

29.     Upon information and belief, Defendants Foreman, Rogers, and Chapman

received notice of the fact that Mrs. Pacheco did not want to continue caring for A.H. and did not

want her residing in her home.  After learning of this information and contrary to DHS policy

Defendants Foreman, Rogers, and Chapman took no action to investigate the matter and failed to

take any action to remove A.H. from the Pacheco home.

30.     Upon information and belief, during a DHS meeting where it was discussed

whether the Pachecos were fit to serve as foster parents, a caseworker from Indian Child

Welfare, Raven Owl, reported to Defendant Keen that the Pacheco residence would be

dangerous for any foster child to be placed and that Mrs. Pacheco did not want to continue caring

for A.H. and did not want her residing in her home. Upon information and belief, Defendant

Edwards was present at this meeting and heard the statements made.  After learning of this

information and contrary to DHS policy, Defendant Keen took no action to investigate the matter and failed to take any action to remove A.H. from the Pacheco home.  Further, Defendant Keen failed to direct her subordinates to take any action regarding the matter.

31.     Upon information and belief, after A.H. during a DHS meeting where it was discussed whether the Pachecos were fit to serve as foster parents, another foster parent who is familiar with the Pacheco residence, reported to Defendant Keen that it would be dangerous for any foster child to be placed in the Pacheco home.  The foster parent explained there was known drug use in the Pacheco home and allegations of abuse taking place in the home. Upon information and belief, Defendant Edwards was present at this meeting and heard the statements made.  After learning of this information and contrary to DHS policy, Defendant Keen took no action to investigate the matter and failed to take any action to remove A.H. from the Pacheco home.  Further, Defendant Keen failed to direct her subordinates to take any action regarding the matter.

32.     Upon information and belief, Defendant Schweitzer was employed as a supervisor in the DHS child abuse and neglect hotline.  Defendant Schweitzer received an allegation of abuse to A.H. while residing in the Pacheco residence and failed to take any action to investigate the matter, failed to provide medical treatment, and failed to take any action to remove A.H. from the Pacheco home.

33.     Defendant Schweitzer failed to direct any of her subordinates to investigate the allegation of abuse she received.  Defendant Schweitzer knowingly failed to follow and enforce DHS policies which are necessary for the safety and well-being of foster children.

34.     Defendant Henry Wright was the immediate supervisor over Defendant Foreman, Rogers, and Chapman and knew each of them were knowingly not following DHS policy and

procedures as it related to investigating A.H.'s bruises, allegations of abuse and personal injury, assessing the dangerous conditions which existed in the Pacheco home, failing to follow DHS reporting requirements, and failing to remove A.H. from the Pacheco home.

35.   Defendant Henry Wright acquiesced to the failures of Defendant Foreman, Rogers, and Chapman.  Defendant Wright knew his subordinates were not taking action to investigate A.H.'s bruises, allegations of abuse and personal injury or remove A.H. from the Pacheco residence.  Defendant Wright knowingly failed to enforce DHS policies or require Defendants Foreman, Rogers, and Chapman to follow such policies which are necessary for the safety and well-being of foster children.

36.   Defendant Henry Wright had knowledge of the Pachecos' unlawful background, the personal injuries suffered by A.H., and the allegations of abuse to A.H. while residing with the Pachecos, yet, he failed to personally investigate or take any action to protect A.H. from the obvious and known dangers which surrounded her while residing with the Pachecos.

37.   As a result of DHS' post-death investigation into the fact and circumstances surrounding A.H.'s foster care case and due to their incompetence in handling A.H.'s case, Defendant Henry Wright was forced to resign and Defendant Foreman agreed to retire from DHS.

38.   Defendants, Edwards and Keen were serving as the County DHS Director and Child Welfare Director, for Cherokee County and possessed knowledge that their subordinates, Defendants Wright, Busch, Bates, Rogers, Foreman, Walkabout, Chapman, and Ridenhour were knowingly not following DHS policy and procedures as it related to assessment of the Pacheco background and known risks, investigation of A.H.'s allegations of abuse and personal injury, and failed to follow DHS reporting requirements.

39.     Defendants Edwards and Keen acquiesced to the failures of Defendant Wright, Busch, Bates, Rogers, Foreman, Walkabout, Chapman, and Ridenhour.  Defendants Edwards and Keen knew their subordinates were not taking action to investigate allegations of abuse and personal injury or remove A.H. from the Pacheco residence.  Defendants Edwards and Keen knowingly failed to enforce DHS policies or require Defendants Wright, Busch, Bates, Rogers, Foreman, Walkabout, Chapman, and Ridenhour to follow such policies which are necessary for the safety and well-being of foster children.

40.     Defendants Edwards and Keen had knowledge of the Pachecos' unlawful background, the personal injuries suffered by A.H., and the allegations of abuse to A.H. while residing with the Pachecos, yet, each failed to personally investigate or take any action to protect A.H. from the obvious and known dangers which surrounded her while residing with the Pachecos.

41.     The DHS Workers knew of the asserted danger to A.H. and failed to exercise professional judgment to protect her from such danger.

42.     Any reasonable DHS official in the circumstances of the DHS Workers would have recognized the obvious and known risks and dangers which surrounded A.H. while residing with the Pachecos and would have taken reasonable steps to alleviate the risks and danger.  The DHS Workers failed to take any reasonable steps to alleviate the obvious and known risks and dangers surrounding A.H.

43.     On or about the evening of December 7, 2013 and the early morning hours of December 8, 2013 Mrs. Pacheco inflicted blunt trauma to A.H.'s body and as a result of the physical abuse she died.

44.    Upon information and belief, Mr. Pacheco knew he and Mrs. Pacheco were not fit to serve as A.H.'s foster parents and could not provide a safe environment for A.H.  Mr. Pacheco was aware of he and Mrs. Pacheco regularly spanking A.H. and her sister, of A.H. suffering personal injuries, and was aware of A.H. being abused.  Despite possessing this knowledge, Mr. Pacheco failed to report his knowledge and understanding to DHS or the DHS Workers, failed to provide A.H. medical treatment, and failed to intervene to save A.H.

45.    On or about December 30, 2013, Mrs. Pacheco was charged in Cherokee County with the first degree murder of A.H.

46.    On September 18, 2014 Mrs. Pacheco was found guilty of the first degree murder of A.H.

47.    Pursuant to 12 O.S. §1051 et seq., Combs claims on behalf of the mother and father herein, damages for their grief, loss of companionship and love of A.H., destruction of the parent-child relationship, medical expenses, and funeral expenses.

#### FIRST CAUSE OF ACTION
#### (DHS WORKERS AND JOHN DOES NOS. 1-8, 42 U.S.C. § 1983; U.S. CONST. AMEND. XIV)

48.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 47, as if fully set forth herein.

49.    When A.H. was taken into the care of DHS a special relationship was created whereby an affirmative duty existed to ensure her protection, safety, and well-being.  Such duty existed at the time A.H. was taken into DHS custody, initially placed, and extended through the entire time she was in foster care.

50.    On information and belief, while Defendants Bates, Walkabout, Ridenhour, and Busch conducted a background study to determine whether the Pachecos were fit to serve as

foster parents, they learned of the Pachecos unlawful background and of dangers that existed in the Pacheco residence.

51.    Despite knowing of the dangers that existed in the Pacheco home Defendants Bates, Walkabout, Ridenhour, and Busch failed to fully investigate such dangers and in face of such dangers knowingly placed A.H. in the Pacheco residence

52.    Defendants Edwards, Keen, Wright, Foreman, Rogers, Chapman, Busch, Schweitzer, and John Does Nos. 1-8 obtained knowledge that A.H. was suffering personal injuries, bruising, and suspected abuse while residing with the Pachecos.

53.    On information and belief, Keen, Foreman, Rogers, Chapman, and John Does Nos. 1-8 were informed that Mrs. Pacheco did not want to continue caring for A.H. as a foster child.

54.    On information and belief, Defendants Foreman, Chapman, Rogers, Bates, and John Does Nos. 1-8 were knowledgeable of drug use taking place in the Pacheco residence while A.H. was residing in the Pacheco residence.

55.    On information and belief, Defendants Edwards, Keen, Wright, Foreman, Rogers, Walkabout, Ridenhour, Chapman, Bates, Busch, Schweitzer and John Does Nos. 1-8 knew or suspected that A.H.'s initial placement and continued stay with the Pachecos created an obvious and unreasonable danger to her health and well-being, which resulted in A.H. suffering personal injury and death.

56.    In the face of obvious and known dangers, Defendants  Edwards, Keen, Wright, Foreman, Rogers, Walkabout, Ridenhour, Chapman, Bates, Busch, Schweitzer, and John Does Nos. 1-8 failed to investigate or take any action to ensure A.H.'s reasonable care and safety while in DHS custody.  The DHS Workers were deliberately indifferent to A.H.'s needs,

-13-

suspected or knew that A.H.'s placement was dangerous, and failed to remove A.H. all in violation of her rights pursuant to U.S. Const. amend. XIV.

57. In the face of obvious and known dangers, Defendants Edwards, Keen, Wright, Foreman, Rogers, Walkabout, Ridenhour, Chapman, Bates, Busch, Schweitzer, and John Does Nos. 1-8 acts, and omissions to act, were arbitrary, reckless, and deliberately indifferent to A.H.'s federally protected rights and was such an abdication of professional responsibility to shock the conscience of any reasonable being.

58. As a direct and proximate result of Defendants Edwards, Keen, Wright, Foreman, Rogers, Walkabout, Ridenhour, Chapman, Bates, Busch, Schweitzer, and John Does Nos. 1-8 violations of A.H.'s federally protected rights, A.H. endured physical torture, abuse, pain, suffering, mental pain and anguish, and death.

Wherefore, Combs prays judgment against Defendants, Steven Edwards, Cathie Keen, Henry Wright, Julia Foreman, Dana Rogers, Thomas Walkabout, Brenda Ridenhour, Brandy Chapman, Betty Bates, William Busch, Dianna Schweitzer, and John Does Nos. 1-8, in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, for physical torture, abuse, pain, suffering, mental pain and anguish, parental grief, loss of companionship and love of A.H., destruction of the parent-child relationship, medical expenses, and funeral expenses, plus pre-judgment and post-judgment interest, and costs, including reasonable attorney's fees; and exemplary and punitive damages against such Defendants in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code to deter such Defendants from committing such reckless and indifferent violations of federally protected rights

-14-

in the future and to apprise the public at large that society does not condone such violations of rights.

## SECOND CAUSE OF ACTION
### (DHS WORKERS AND JOHN DOES NOS. 1-8, NEGLIGENCE / WRONGFUL DEATH)

59.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 47, as if fully set forth herein.

60.    Defendants Edwards, Keen, Wright, Foreman, Rogers, Walkabout, Ridenhour, Chapman, Bates, Busch, and John Does Nos. 1-8, owed a duty to A.H. of due care and to take reasonable measures for her safety and well-being while in custody of DHS.  When A.H. was taken into the care of DHS a special relationship was created whereby an affirmative duty existed to ensure the protection, safety, and well-being of A.H.  Such duty existed at the time of A.H.'s initial placement in foster care and extended through the entire time she was in foster care.

61.    Defendants Edwards, Keen, Wright, Foreman, Rogers, Wright, Walkabout, Ridenhour, Chapman, Bates, Busch, and John Does Nos. 1-8, breached their duty, and such breach was a proximate and direct cause of A.H.'s personal injuries, failure to receive medical care, and wrongful death.

62.    Such breach of duty was in bad faith, and in reckless disregard of A.H. rights, was intentional and without cause or excuse, endangering human life.

63.    As a result of Defendants Edwards, Keen, Wright, Foreman, Rogers,  Walkabout, Ridenhour, Chapman, Bates, Busch, and John Does Nos. 1-8, negligence, A.H. endured physical torture, abuse, pain, suffering, mental pain and anguish, and death.

Wherefore, Combs prays judgment against Defendants, Steven Edwards, Cathie Keen, Henry Wright, Julia Foreman, Dana Rogers, Thomas Walkabout, Brenda Ridenhour, Brandy Chapman, Betty Bates, William Busch, Dianna Schweitzer, and John Does Nos. 1-8 in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, for physical torture, abuse, pain, suffering, mental pain and anguish, parental grief, loss of companionship and love of A.H., destruction of the parent-child relationship, medical expenses, and funeral expenses, plus pre-judgment and post-judgment interest, and costs, including reasonable attorney's fees; and exemplary and punitive damages against such Defendants in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code to deter such Defendants from committing such reckless and indifferent violations of federally protected rights in the future and to apprise the public at large that society does not condone such violations of rights.

### THIRD CAUSE OF ACTION
### (STEVEN EDWARDS, CATHIE KEEN, HENRY WRIGHT, DIANNA SCHWEITZER, WILLIAM BUSCH, AND JOHN DOES NOS. 1-8, SUPERVISOR LIABILITY; 42 U.S.C. § 1983; U.S. CONST. AMEND. XIV)

64.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 47, as if fully set forth herein.

65.     Upon information and belief, Defendants Edwards, Keen, Schweitzer, Busch, and Wright are believed to have held supervisor positions with DHS.

66.     Upon information and belief, Defendants Edwards, Keen, Schweitzer, Busch, and Wright were responsible for all beneath them, including Defendants Foreman, Rogers, Walkabout, Ridenhour, Chapman, Bates, and John Doe Nos. 1-8.

-16-

67.     Defendant Busch personally participated in the background home study with his subordinates Bates, Walkabout, and Ridenhour to determine whether the Pachecos were fit to serve as foster parents of A.H.  While investigating the Pachecos' background, he obtained knowledge of their unlawful and dangerous activities.  Despite knowing of the dangerous conditions in the Pacheco residence, he failed to take any action to personally investigate the dangers and failed to direct his subordinates to investigate.  Rather, Busch decided not to obtain required paperwork because it would have "wasted another day" and further decided not to read paperwork regarding the protective order filed against the Pachecos in 2012.

68.     Defendant Busch knew his subordinates, Defendants Bates, Walkabout, and Ridenhour were not taking action to fully investigate whether the Pachecos were fit to serve as foster parents and acquiesced to their failures.  Busch failed to direct Bates, Walkabout, and Ridenhour to investigate and fully assess the Pachecos' background and further failed to enforce DHS policies which are necessary for the safety and well-being of foster children.  Instead, Busch approved the Pachecos as fit to serve as foster parents and further approved A.H.'s placement with them.

69.     Defendants Wright, Keen, and Busch personally participated in assessing A.H. after her placement in the Pacheco residence.  While assessing A.H., each of them learned that she had suffered bruises to her face.  Upon learning this fact, each failed to personally investigate the matter, failed to properly report the matter, and failed to provide medical treatment to A.H.

70.     Defendants Wright and Busch knew their subordinates, Defendants Foreman, Rogers, and Chapman possessed knowledge of A.H. suffering bruises and were not taking action to fully investigate the matter.  Wright and Busch acquiesced to their subordinates' failure to investigate A.H.'s bruises.  Wright and Busch failed to direct their subordinates to investigate the

matter and failed to enforce DHS policies which are necessary for the safety and well-being of foster children.

71.    Defendant Wright possessed knowledge that A.H. had suffered personal injuries including a broken leg on November 6, 2013 and bruises her to body while residing with the Pachecos.   Wright was further made aware of concerns that medical providers from Tahlequah City Hospital had about A.H. being left unattended at the time of injuring her leg and allegations of abuse.  Despite having knowledge of these matters, Wright failed to personally investigate or take any action to protect A.H. from the obvious and known dangers.

72.    Defendant Wright was the immediate supervisor over Defendants Foreman, Rogers, and Chapman, and knew each of them were knowingly not investigating A.H.'s bruises, allegations of abuse and personal injury to A.H., were not assessing the dangerous conditions in the Pacheco home, were not following DHS policy and procedural requirements, and were not taking action to remove A.H. from the Pacheco home.

73.    Defendant Wright acquiesced to the failures of Defendants Foreman, Rogers, and Chapman.  Wright failed to direct Foreman, Rogers, and Chapman to investigate or protect A.H. from known dangers, failed to enforce DHS policies, and failed to require his subordinates to follow such policies.

74.    Defendant Keen was the supervisor over Defendants Wright, Busch, Foreman, Rogers, and Chapman and knew her subordinates had knowledge of A.H. suffering bruises and were not taking action to fully investigate the matter.  Keen acquiesced to her subordinates' failure to investigate A.H.'s bruises.  Keen failed to direct her subordinates to investigate the matter and failed to enforce DHS policies which are necessary for the safety and well-being of foster children.

-18-

75.    That during a DHS meeting where the Pachecos' qualifications to serve as foster parents were discussed, a caseworker from Indian Child Welfare and another foster parent familiar with the Pacheco household reported to Defendant Keen that any foster child would be placed in danger by residing in the Pacheco home, there was known drug use in the home, and that Mrs. Pacheco did not want to continue care for A.H. or want her residing in her home.  Keen failed to personally investigate the matter and failed to take action to remove A.H. from the Pacheco home.  Further, Keen failed to direct her subordinates to investigate or remove A.H. and failed to enforce DHS policies which are necessary for the safety and well-being of foster children.

76.    Upon information and belief, Defendant Schweitzer was a supervisor for the DHS child abuse and neglect hotline and received an allegation that A.H. was being abused while residing in the Pacheco residence.  Schweitzer failed to personally investigate the matter, failed to provide medical treatment to A.H., and failed to take any action to remove A.H. from the home.  Further, Defendant Schweitzer failed to direct her subordinates or anyone else to investigate the allegation and knowingly failed to follow and enforce DHS policies which are necessary for the safety and well-being of foster children.

77.    Upon information and belief, Defendant Edwards, who was the Cherokee County DHS Director, attended a DHS meeting where it was discussed whether the Pachecos were qualified to serve as foster parents and heard Raven Owl report to Defendant Keen that any foster child would be placed in danger by residing in the Pacheco home and that Mrs. Pacheco did not want to continue caring for A.H., nor did she want A.H. residing in her home.  Further, Edwards heard another foster parent at the meeting report to Keen that there was known drug use in the Pacheco home and allegations of abuse taking place in the home.  Defendant Edwards took

no action to personally investigate the matters or to remove A.H. from the Pacheco home.
Despite knowing his subordinates were not taking action to investigate the matter, Defendant
Edwards failed to direct his subordinates to investigate or take action.

78.    Upon information and belief, it was reported to Defendant Edwards that A.H. had
suffered bruises to her body while residing with the Pachecos.  Defendant Edwards took no
action to personally investigate the matters or to remove A.H. from the Pacheco home. Despite
knowing his subordinates were not taking action to investigate the matter, Defendant Edwards
failed to direct his subordinates to investigate.

79.    Defendant Edwards possessed knowledge that his subordinates, Defendants Keen,
Schweitzer, Busch, Wright, Foreman, Rogers, Walkabout, Ridenhour, Chapman, Bates were
knowingly not following DHS policy and procedures as it related to assessment of the Pacheco
background and known risks, investigation of A.H.'s allegations of abuse and personal injury,
were not following DHS reporting requirements, and were not taking action to protect A.H. from
obvious and known dangers.

80.    Upon information and belief, Defendants Edwards, Keen, Schweitzer, Busch, and
Wright were aware that the Defendant subordinates, were improperly supervised and trained,
causing a pattern of unconstitutional acts.

81.    Upon information and belief, Defendants Edwards, Keen, Schweitzer, Busch, and
Wright were deliberately indifferent to the acts of DHS personnel, including but not limited to
Foreman, Rogers, Walkabout, Ridenhour, Chapman, Bates, and John Doe Nos. 1-8.  This
resulted in the knowing creation of a dangerous environment for A.H. and all other foster
children who may come in contact with them.

82. Upon information and belief, Defendants Edwards, Keen, Wright, Busch, and Schweitzer failed to ensure A.H.'s reasonable care and safety while in DHS custody, were deliberately indifferent to A.H.'s needs, suspected or knew that A.H. placement and continued residence with the Pachecos was dangerous, all in violation of her rights pursuant to U.S. Const. amend. XIV.

83. Upon information and belief, Defendants Edwards, Keen, Wright, Busch Schweitzer failure to supervise and train, directly participated in A.H.'s alleged constitutional violations, and acquiesced to such constitutional violations and their subordinates known failures, acts, and omissions which proximately caused the personal injury, torture, and death of A.H.

84. Upon information and belief, Defendants Edwards, Keen, Wright, Busch, and Schweitzer acts and omissions to act, failure to supervise and train, direct participation in A.H.'s alleged constitutional violations, and acquiescence to such constitutional violations and their subordinates' acts and omissions was reckless and each was callously indifferent to their duty to train and supervise their subordinates, and to A.H.'s federally protected rights.

85. Any reasonable DHS official in the same or similar circumstances of Defendants Edwards, Keen, Schweitzer, Busch, and Wright would have recognized the obvious and known serious risk of harm which surrounded A.H. while residing in the Pacheco residence and would have taken reasonable steps to alleviate the risks and danger.

86. Defendant Edwards, Keen, Wright, Busch, and Schweitzer acts and omissions to act, failure to supervise and train, direct participation in A.H.'s alleged constitutional violations, and acquiescence to such constitutional violations and their subordinates' acts and omissions

directly and proximately caused violations of A.H.'s federally protected rights, which caused

A.H. to endured physical torture, abuse, pain, suffering, mental pain and anguish, and death.

Wherefore, Combs prays judgment against Defendants, Steven Edwards, Cathie Keen,

Henry Wright, Dianna Schweitzer, and John Does Nos. 1-8 in an amount which exceeds the

amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United

States Code, for physical torture, abuse, pain, suffering, mental pain and anguish, parental grief,

loss of companionship and love of A.H., destruction of the parent-child relationship, medical

expenses, and funeral expenses, plus pre-judgment and post-judgment interest, and costs,

including reasonable attorneys fees; and exemplary and punitive damages against such

Defendants in an amount which exceeds the amount required for diversity jurisdiction pursuant

to Section 1332 of Title 28 of the United States Code to deter such Defendants from committing

such reckless and indifferent violations of federally protected rights in the future and to apprise

the public at large that society does not condone such violations of rights.

## FOURTH CAUSE OF ACTION
### (DHS:  OGTCA / NEGLIGENCE / WRONGFUL DEATH / RESPONDEAT SUPERIOR VIA DHS WORKERS AND JOHN DOES NOS. 1-8)

87.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 47, as if fully set forth herein.

88.    The DHS Workers and John Does Nos. 1-8, owed a duty to A.H. of due care and to take reasonable measures for her safety and well-being while in custody of DHS.  When A.H. was taken into the care of DHS a special relationship was created whereby an affirmative duty existed to ensure her protection, safety, and well-being.  Such duty existed at the time of A.H.'s initial placement in foster care and extended through the entire time she was in foster care.

89.     The DHS Workers and John Does Nos. 1-8, acting in the scope of their employment, breached their duty by failing to provide medical treatment and by failing to remove A.H. from the Pacheco residence, and such breach was a proximate and direct cause of A.H.'s wrongful death.

90.     Defendant DHS is liable for the DHS Workers and John Does Nos. 1-8 acts and omissions under the doctrine of respondeat superior and the provisions of 51 O.S. §151, *et seq.*

91.     As a result of DHS's negligence, A.H. endured physical torture, pain, suffering, mental pain and anguish, and death.

Wherefore, Combs prays judgment against Defendant DHS, in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, for physical torture, abuse, pain, suffering, mental pain and anguish, parental grief, loss of companionship and love of A.H., destruction of the parent-child relationship, medical expenses, and funeral expenses, plus pre-judgment and post-judgment interest, and costs, including reasonable attorney's fees.

## FIFTH CAUSE OF ACTION
### (DELILA PACHECO AND LONGINO PACHECO-LOPEZ, 42 U.S.C. § 1983; U.S. CONST. AMEND. XIV)

92.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 47, as if fully set forth herein.

93.     At all times relevant hereto, Mr. and Mrs. Pacheco were acting as State actors via their employment relationship with DHS.

94.     When A.H. was taken into the care of DHS and the Pachecos a special relationship was created whereby an affirmative duty existed to ensure the protection, safety, and well-being of A.H.

95.     On information and belief, Mr. and Mrs. Pacheco in their individual capacities as foster parents for DHS, created an unreasonably dangerous environment for A.H. and failed to ensure her protection and safety while residing in their home.

96.     On information and belief, Mr. and Mrs. Pacheco were informed of, actually observed, and caused A.H. personal injuries and suspected abuse.  The following events took place:

a) On or about November 6, 2013 A.H. suffered a broken leg in the Pacheco home;

b) A.H. was physically abused;

c) A.H. suffered bruising to her body;

d) Mr. and Mrs. Pacheco spanked A.H. on multiple occasion, which included being hit with a belt;

e) Drugs were used in the Pacheco home;

f) Mr. and Mrs. Pacheco failed to provide proper medical treatment to A.H.

97.     On information and belief, Mr. and Mrs. Pacheco in their individual capacities as foster parents for DHS knew they did not want to continue caring for and were not capable of caring for A.H. as a foster child.

98.     Mr. and Mrs. Pacheco acted with deliberate indifference and malice to A.H.'s needs which resulted in her death.

99.     Mr. and Mrs. Pacheco knew that A.H.'s placement and continued residence with them created a serious danger to her health and well-being, which allowed her to suffer personal injury and die, all in violation of her rights pursuant to the U.S. Const. amend. XIV.

100.    Mr. and Mrs. Pachecos' acts, and omissions to act, were arbitrary, reckless, and deliberately indifferent to A.H.'s federally protected rights and was such an abdication of responsibility to shock the conscience of any reasonable being.

101.    As a result of Mr. and Mrs. Pachecos' violations of A.H.'s federally protected rights, A.H. endured physical torture, abuse, pain, suffering, mental pain and anguish, and death.

Wherefore, Combs prays judgment against Defendants Delila Pacheco and Longino Pacheco-Lopez in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, for physical torture, abuse, pain, suffering, mental pain and anguish, parental grief, loss of companionship and love of A.H., destruction of the parent-child relationship, medical expenses, and funeral expenses, plus pre-judgment and post-judgment interest, and costs, including reasonable attorney's fees; and exemplary and punitive damages against such Defendants in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code to deter such Defendants from committing such reckless and indifferent violations of federally protected rights in the future and to apprise the public at large that society does not condone such violations of rights.

### SIXTH CAUSE OF ACTION
### (DELILA PACHECO AND LONGINO PACHECO-LOPEZ, NEGLIGENCE / WRONGFUL DEATH)

102.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 47, as if fully set forth herein.

103.    Mr. and Mrs. Pacheco owed a duty to A.H. of due care and to take reasonable measures for her safety and well-being while under her care.

104.    Mr. and Mrs. Pacheco breached their duty, and such breach was a proximate and direct cause of A.H.'s being subjected to a dangerous environment, personal injuries, failing to receive appropriate medical attention, and wrongful death.

105.    As a result of Mr. and Mrs. Pachecos' negligence, A.H. endured personal injury, physical torture, abuse, pain, suffering, mental pain and anguish, and death.

Wherefore, Combs prays judgment against Defendants Delila Pacheco and Longino Pacheco-Lopez, in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, for physical torture, abuse, pain, suffering, mental pain and anguish, parental grief, loss of companionship and love of A.H., destruction of the parent-child relationship, medical expenses, and funeral expenses, plus pre-judgment and post-judgment interest, and costs, including reasonable attorney's fees; and exemplary and punitive damages against such Defendants in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code to deter such Defendants from committing such reckless and indifferent violations of federally protected rights in the future and to apprise the public at large that society does not condone such violations of rights.

### SEVENTH CAUSE OF ACTION
#### (DHS:  OGTCA / NEGLIGENCE / WRONGFUL DEATH / RESPONDEAT SUPERIOR VIA DELILA PACHECO AND LONGINO PACHECO-LOPEZ)

106.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 47, as if fully set forth herein.

107.    At all times relevant hereto, Defendants Mr. and Mrs. Pacheco served as foster parents employed by DHS and were acting as State actors.

108.     Upon information and belief, DHS exerted a high degree of control over Mr. and Mrs. Pacheco by dictating the method and manner in which they would perform their duties as foster parents.

109.     Mr. and Mrs. Pacheco owed a duty to A.H. of due care and to take reasonable measures for her safety and well-being while under her care.

110.     Mr. and Mrs. Pacheco breached their duty, and such breach was a proximate and direct cause of A.H.'s personal injuries, failing to receive medical treatment, and wrongful death.

111.     As a result of Mr. and Mrs. Pachecos' negligence, A.H. endured personal injuries, pain, suffering, mental pain and anguish, and death.

112.     Defendant DHS is liable for Defendants Mr. and Mrs. Pachecos' acts and omissions to act under the doctrine of respondeat superior.

Wherefore, Combs prays judgment against Defendant DHS, in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, for physical torture, abuse, pain, suffering, mental pain and anguish, parental grief, loss of companionship and love of A.H., destruction of the parent-child relationship, medical expenses, and funeral expenses, plus pre-judgment and post-judgment interest, and costs, including reasonable attorney's fees.

### EIGHTH CAUSE OF ACTION
#### (DHS:  OKLA. CONST. ART. 2, §30
##### RESPONDEAT SUPERIOR VIA DHS WORKERS, JOHN DOES NOS. 1-8,
##### AND DELILA PACHECO AND LONGINO PACHECO-LOPEZ)

113.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 47, as if fully set forth herein.

114.     At all times relevant hereto, Defendants Mr. and Mrs. Pacheco served as foster employed by DHS and were acting as State actors.

115.   The DHS Workers were responsible for providing oversight of Mr. and Mrs. Pacheco by ensuring implementation of DHS policies, training of Mr. and Mrs. Pacheco as foster parents, and development of goals and objectives to ensure A.H.'s safety and well-being.

116.   On information and belief, DHS Workers were informed of A.H.'s personal injuries and suspected abuse while in the Pachecos' care and custody.

117.   On information and belief, DHS Workers were informed that the Pachecos did not want to continue caring for A.H. as a foster child.

118.   On information and belief, DHS Workers knew or suspected that A.H.'s continued stay with the Pachecos created a danger to her health and well-being.

119.   The DHS Workers, John Does Nos. 1-8, and Mr. Pacheco failed to intervene to prevent Mrs. Pacheco's use of excessive force.

120.   That on or about December 7-8, 2013 acting within the scope of her employment and as a result of an emotional response to actions being taken for DHS, Mrs. Pacheco used excessive force upon A.H. by physically assaulting her which was the proximate and direct cause of her death.

121.   That Mr. Pacheco was present when Mrs. Pacheco used excessive force against A.H. and failed to intervene to prevent such use of force.

122.   The DHS Workers, John Does Nos. 1-8,  and Mr. and Mrs. Pacheco owed a duty to A.H. of due care and to take reasonable measures for her safety and well-being while under her care.

123.   The DHS Workers, John Does Nos. 1-8, and Mr. and Mrs. Pacheco breached their duty, and such breach was a proximate and direct cause of A.H.'s wrongful death.

124.      As a result of the DHS Workers, John Does Nos. 1-8, and Mr. and Mrs. Pachecos' conduct, A.H. was subjected to excessive force and endured physical torture, pain, suffering, mental pain and anguish, and death.

125.      Defendant DHS is liable for Defendant DHS Workers, John Does Nos. 1-8, and Mr. and Mrs. Pachecos' acts and omissions to act under the doctrine of respondeat superior.

Wherefore, Combs prays judgment against Defendant DHS, in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, for physical torture, abuse, pain, suffering, mental pain and anguish, parental grief, loss of companionship and love of A.H., destruction of the parent-child relationship, medical expenses, and funeral expenses, plus pre-judgment and post-judgment interest, and costs, including reasonable attorney's fees.

Respectfully Submitted,

GIBBON, BARRON & BARRON

s/ Zachary T. Barron
Zachary T. Barron, OBA # 18919
20 East 5th Street, Suite 1000
Tulsa, Oklahoma 74103
(918) 745-0687 Telephone
(918) 745-0821 Facsimile
Zbarron@gbbfirm.com

And

James Cosby, OBA # 19319
COSBY LAW FIRM, PLLC
218 S. Muskogee Avenue
Tahlequah, Oklahoma 74464
(918) 458-0069 Telephone
(918) 458-9969 Facsimile
Cosbylawfirm@yahoo.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of April, 2015, I electronically transmitted the attached documtne to the Clerk of Court using the ECF System for filing.  Based on the records currently on file the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Richard W. Freeman Jr.
Richard.Freeman@okdhs.org

Joseph W. Strealy
Joseph.Strealy@okdhs.org

s/ Zachary T. Barron
Zachary T. Barron

-30-